

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2004

# Progressive N Ins Co v. Edmunds

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4223

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Progressive N Ins Co v. Edmunds" (2004). *2004 Decisions*. Paper 43.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/43

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-4223

———————

PROGRESSIVE NORTHERN
INSURANCE COMPANY,

Appellant

v.

HERBERT LEE EDMUNDS; JAMES BANTUM

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-cv-05047)
District Judge: Honorable Berle M. Schiller

———————

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2004

Before: AMBRO, VAN ANTWERPEN and STAPLETON, Circuit Judges

(Opinion filed      December 22, 2004   )

———————

OPINION

———————

AMBRO, Circuit Judge

Progressive Northern Insurance Company ("Progressive") appeals the decision of

the District Court that, as a matter of law, Progressive could not avoid coverage of

Herbert Lee Edmunds'[1] and James Bantum's injuries resulting from a car accident under the "business use" exclusion in Edmunds' automobile insurance policy. For the reasons that follow, we affirm the decision of the District Court.

## I. Factual Background and Procedural History

On July 15, 2000, Edmunds and Bantum were involved in an automobile accident. At the time of the accident, Edmunds was operating his 1992 Chevy Blazer, a personal vehicle covered under an insurance policy with Progressive. This policy included a "business use" exclusion providing that coverage did not apply to "bodily injury or property damage arising out of the ownership, maintenance, or use of a vehicle while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products." The applicability of this exclusion to Edmunds' and Bantum's claims arising out of the July 2000 accident is the sole issue before us.

Edmunds is an equal partner in Burgess & Edmunds, a beer distributorship, the operation of which includes delivering beer directly to customers—mainly to bars, but also to personal residences. Bantum testified that he often performed odd jobs for the distributorship. Edmunds stated that he paid Bantum "under the table" and that Bantum sometimes helped Edmunds unload trucks.

---

[1]In his brief, Appellee Edmunds' last name is consistently spelled "Edmonds." However, because he is listed as "Edmunds" in the caption and on the docket sheet, we refer to him as "Edmunds" in this opinion.

In July 2000, Burgess & Edmunds used a vehicle insured by State Farm Insurance Company under a commercial policy to deliver beer. That vehicle displayed the license number required by the Liquor Control Board for the transportation of alcoholic beverages. On the day of the accident, the usual delivery vehicle was in the shop for repairs, and the loaner vehicle usually provided by the garage for deliveries was also unavailable.

On the day of the accident, Edmunds traveled in the Chevy Blazer from his home to the beer distributorship to pick up ice, beer, and soda for a family barbecue. While he was at the distributorship, Mary Jones, whom Edmunds had known for approximately twenty years, called and requested that two cases of beer be delivered to her home. Edmunds testified that he told Jones there were no deliveries that day. He then relented and told her that he would do her a favor and bring her the beer at cost. Bantum loaded Jones' beer into the Chevy Blazer, and the two drove to Jones' house, where they dropped off the beer. Bantum testified that he had never before seen Edmunds deliver beer in that vehicle.

At his deposition Edmunds testified that Jones was supposed to pay him $23.60 for the beer but instead paid him $22.30. But at trial, Edmunds testified that he had been mistaken about the amount at his deposition and that he charged Jones the wholesale cost of the beer, which was about $18.00. Jones also stated that Edmunds charged her $18.00 for the beer she received that day.

3

Edmunds also testified that, after taking the beer to Jones, he planned on going home because Bantum was going to help him take the supplies for the barbecue into the house. According to Bantum, they had to go back to the distributorship instead because they had forgotten the sodas for the barbecue. But en route to the distributorship, they were in an accident.

When the police arrived at the scene of the accident, they smelled alcohol and placed Edmunds under arrest, believing that he had been driving under the influence. At the police station, Edmunds was examined and taken to the hospital for his injuries. Bantum was also hospitalized. On July 20, 2000, while Edmunds was still in the hospital, he gave a statement to a Progressive representative over the telephone and told the representative that the police smelled beer in his truck at the time of the accident because he was going to make a delivery. At the time Edmunds made this statement, he was being given morphine in addition to Percocet, which he had been taking prior to the accident for another condition. Edmunds' wife stated that he was not himself when he gave the statement. Edmunds made another statement to Progressive on July 24, 2000. In that statement, Edmunds also said that he was "delivering to houses" on the day of the accident.

Edmunds and Bantum made claims under Edmunds' Progressive policy, and Progressive denied both claims under the business use exclusion quoted above. Progressive then filed a declaratory judgment action in the United States District Court

4

for the Eastern District of Pennsylvania seeking a decision that the exclusion applied because, at the time of the accident, Edmunds was using his personal vehicle to deliver beer to Jones for compensation as part of his beer distribution business. The parties consented to trial before a magistrate judge. After trial, Chief Magistrate Judge Melinson entered judgment in favor for Edmunds and Bantum. Progressive appeals from that order.[2]

## II. Analysis

Progressive argues that: (1) the District Court's finding of fact that Edmunds was not using his personal vehicle to carry property for compensation or a fee at the time of the accident was clearly erroneous; and (2) the District Court erred as a matter of law in concluding that the business use exclusion did not apply to preclude coverage of Edmunds' and Bantum's claims under the Progressive policy.

### A.   District Court's Finding of Fact Regarding the Use of Edmunds' Personal Vehicle

As Progressive concedes, we review the District Court's findings of fact for clear error. Medtronic Ave, Inc. v. Advanced Cardiovascular Sys. Inc., 247 F.3d 44, 53 (3d Cir. 2001); Fed. R. Civ. P. 52(a). "A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is left with a definite and firm conviction that a mistake has been committed." Shore Regional High Sch. Bd. of Ed. v. P.S. ex rel. P.S.,

---

[2]We have jurisdiction under 28 U.S.C. § 1291.

5

381 F.3d 194, 199 (3d Cir. 2004) (internal quotation omitted). Our review of the District Court's factual findings is even more deferential regarding determinations of the credibility of witnesses. Newark Branch, NAACP v. City of Bayonne, 134 F.3d 113, 120 (3d Cir. 1998) .

The District Court here found that, at the time of the accident, "Edmunds' vehicle was not being used to carry persons or property for compensation or a fee." The Court based this finding on the following factors: (1) "Edmunds was driving his car on personal business picking up supplies for his barbeque"; (2) Edmunds' "delivery to Mrs. Jones was done as a favor to a personal friend"; (3) "[t]he only monies received were for reimbursement of the costs for the two cases of beer delivered to Mrs. Jones"; and (4) "the delivery to Mrs. Jones was incidental and would not have been made if it were not for the fact that Edmunds was already picking up his own supplies at the distributorship." These findings are amply supported by the testimony at trial. As the District Court noted, Edmunds' trial testimony was consistent with the testimony of other witnesses[3], particularly Jones' testimony that she paid about $18.00 for the beer on the day of the accident, as opposed to her usual payment of $23.60 for the same order.

Progressive nevertheless contends that the District Court's ultimate finding that Edmunds was not using his personal vehicle for business purposes was clearly erroneous

---

[3]Before trial, the parties engaged in an arbitration of Progressive's declaratory judgment claim. Edmunds demanded a trial de novo to appeal the arbitration award, and the parties stipulated to the admission of the arbitration testimony at trial.

6

because, *inter alia*, Bantum was an employee of the beer distributorship and, in Edmunds' statements to Progressive, he conceded that he was making deliveries to houses. We are unpersuaded. Regarding Bantum's employment, the District Court's finding that Bantum performed odd jobs for the distributorship and was paid under the table is supported by the trial testimony of both Bantum and Edmunds. As to Edmunds' statements that he was making deliveries to houses at the time of the accident, the District Court correctly noted that those statements do not mention whether the deliveries were made for a fee.

Although Progressive's interpretation of the facts may have some support in the record, that alone does not render clearly erroneous the District Court's finding regarding the use of Edmunds' personal vehicle on the day of the accident. The record in a case may often support different interpretations of events, yet (as stated above) we may only overturn the District Court's finding if we have a "definite and firm conviction that a mistake has been committed." Here, because the District Court's factual finding that Edmunds was not using his personal vehicle for business purposes is supported by the trial and arbitration testimony, we are not left with such a conviction. Accordingly, we will uphold the District Court's finding of fact.

B.   **District Court's Determination that the Business Use Exclusion Does Not Preclude Coverage**

Our review of the District Court's application of the law to the facts of this case is plenary. See Carlisle Area Sch. v. Scott P., 62 F.3d 520, 526 (3d Cir. 1995). Under

Pennsylvania law[4], the determination of whether the business use exclusion operates to preclude coverage under a personal vehicle insurance policy depends on the facts of the particular case. Aetna Cas. & Surety Co. v. Davis, 614 A.2d 273, 278-79 (Pa. Super. Ct. 1992). In the context of business use exclusions that prohibit the use of personal vehicles to carry passengers for hire, it is "well settled that an occasional or incidental use of the insured vehicle to transport passengers" will not trigger the application of the exclusion. Id. at 278. In this case, Bantum testified that he had never seen Edmunds use his Chevy Blazer to deliver beer prior to the day of the accident, and it is undisputed that the distributorship had another vehicle, insured under a commercial policy, that was regularly used for deliveries. Edmunds' use of his personal vehicle to drop off beer to Jones appears to have been incidental, rather than a regular occurrence, such that the application of the business use exclusion in his policy would not be triggered.[5]

Progressive emphasizes that Edmunds was paid for the beer he delivered and

---

[4]The parties agree that Pennsylvania law applies to this diversity action because Edmunds' policy was issued in Pennsylvania and the accident occurred in Pennsylvania.

[5]Progressive's reliance on Ratush v. Nationwide Mut. Ins. Co., 619 A.2d 733 (Pa. Super. Ct. 1992), and Rykill v. Franklin Fire Ins. Co., 80 Pa. Super. 492 (1922), in support of its argument that the business use exclusion applies here is misplaced. In both Ratush and Rykill the vehicles in question were regularly used for business purposes. See Ratush, 619 A.2d at 734 (holding that business use exclusion precluded coverage when insured was operating a taxicab whose purpose was to carry passengers for hire even though, at the time of the accident, insured did not have a passenger); Rykill, 80 Pa. Super. at 493-95 (holding that business use exclusion applied when the car's use for the prohibited purpose of carrying passengers for hire was habitual rather than exceptional). As we discussed, there is no support in our case for finding that Edmunds' use of his personal vehicle to deliver beer was habitual.

8

argues that even if that payment merely covered Edmunds' costs, it still amounted to compensation for delivering the beer to Jones. The mere fact that some consideration was paid, however, is not dispositive. In determining whether a business use exclusion applies, courts take into account not just the "bare transaction but all its surrounding circumstances." Id. at 279. The following factors, among others, are relevant to this determination: "[1] the status and relations of the parties to one another, [2] the existence or lack of a common interest, [3] pleasure or benefit in the making of the journey, and [4] the relation of the amount of money to the actual costs of carrying." Id. (internal quotation omitted).

Edmunds was using his personal vehicle to carry supplies for a family event. He had known Jones for many years and agreed to deliver beer to her as a personal favor. Bantum accompanied Edmunds in order to help him unload beer, soda, and ice for the barbecue. Although Jones paid Edmunds for the beer he dropped off, nothing about the transaction indicates that the beer delivery to Jones in Edmunds' personal vehicle was anything other than an isolated incident in which Edmunds performed a favor for a friend and for which he received no compensation beyond the wholesale cost of the beer. Thus, the District Court was correct that, under the factors articulated in Davis, the business use exclusion in Edmunds' policy does not apply. See 614 A.2d at 279 (holding that business use exclusion did not apply to preclude coverage of an insured after a car accident when the insured had been transporting a refrigerator in his personal vehicle as a favor to a

9

friend, had no expectation of compensation except being reimbursed for the cost of gas, and it was an isolated incident.).

### III. Conclusion

As the District Court's decision appears correct on each of Progressive's two arguments, we affirm.